**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-01562-NYW-STV

ARROW ENTERPRISE COMPUTING SOLUTIONS, INC.,

      Plaintiff,

v.

RIGHT PRICEIT, LLC,
NICHOLAS PRICE, and,
DOES 1 through 10,

      Defendants.

---

## ORDER

---

This matter comes before the Court on the Motion for Default Judgment (or "Motion") filed by Plaintiff Arrow Enterprise Computing Solutions, Inc. ("Arrow" or "Plaintiff"). [Doc. 22, filed September 20, 2022]. Upon review of the Motion, exhibits, and applicable law, the Motion for Default Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Arrow initiated this civil action on June 23, 2022 against Defendants Right PriceIT, LLC ("Right PriceIT"), Nicholas Price ("Mr. Price"), and Does 1 through 10 (collectively, "Defendants"). [Doc. 1]. Arrow is a global provider of products, services, and solutions to industrial and commercial users of electronics components and enterprise computing solutions. [*Id.* at ¶ 9]. Right PriceIT "operates in the computer[-]related consulting services industry." [*Id.* at ¶ 10]. The business relationship at issue consisted of Arrow selling products to Right PriceIT pursuant to purchase orders, and Right PriceIT reselling the products to its end users. [*Id.* at ¶ 11]. Non-party EC America, Inc. ("EC America") is a subsidiary of immixGroup, an Arrow subsidiary,

and EC America helps technology companies do business with the government. [*Id.*]. In this case, Right PriceIT submitted purchase orders to EC America, and EC America issued invoices to Right PriceIT for payment. [*Id.*].

**The Security Agreement.** Right PriceIT and non-party Single Source IT, LLC ("Single Source") "executed a Security Agreement with Arrow and its subsidiaries, in which Right [PriceIT] and Single [Source] granted Arrow a Purchase Money Security Interest" in various collateral ("Security Agreement" or "Agreement") to secure Right PriceIT's and Single Source's obligations under the Security Agreement. [*Id.* at ¶ 12];[1] *see also* [Doc. 22-2 at 6–13 (Security Agreement)].[2] The collateral under the Security Agreement includes, *inter alia*,

> all electronic merchandise and/or other products sold to [Right PriceIT and Single Source] as specifically identified in . . . purchase order numbers 10162019NPDOT321500 and 011 (or any other purchase orders accepted by [Arrow] in an amendment to this agreement), together with any improvements, replacements, accessions, and additions to it as well as the proceeds derived from the sale of said product . . . to [Single Source's] customer, Ohio Department of Transportation (end-user) or any other end-user, in accordance with end-user's purchase order number(s) 321500 . . . or any other purchase order issued to either [Right PriceIT] or [Single Source] and accepted by [Arrow] in an amendment to [the Security Agreement].

[Doc. 22-2 at 6, ¶ 2]. Under paragraph 4 of the Security Agreement, Right PriceIT and Single Source agreed to instruct end-users to make all payments to a designated P.O. Box in Newark, New Jersey. [*Id.* at 7, ¶ 4.a]. They also agreed "[t]o use all necessary diligence to obtain payment from the end-user and to ensure that the proceeds are delivered promptly" to Arrow, and "[n]ot to commingle the proceeds with other property or proceeds," including "not to deposit the proceeds to any bank account." [*Id.* at ¶ 4.b–c]. Section 5 of the Agreement provides as follows:

---

[1] When quoting from the Complaint or Motion, the Court does not follow Plaintiff's practice of identifying the Parties using all capital letters. *See generally* [Doc. 1; Doc. 22-1].

[2] When citing the record, the Court will cite to the page numbers generated by the Case Management/Electronic Case Files system, located at the top of each page.

> The assigned funds, which constitute payment pursuant to this agreement, are the property of [Arrow]. If such funds (in the form of a check or other negotiable instrument) are received by either [Right PriceIT or Single Source (or "Debtor")], such Debtor will immediately forward such items to the address described in paragraph 4 above, or if funds are directly deposited into either of Debtor's bank account by Debtor's customer or in error by either Debtor, such Debtor will make payment of same to [Arrow] within 24 hours of deposit. Any failure to abide by the foregoing or Debtors' instructions to Debtors' customers to make payments of funds in any way other than as described in paragraph 4 above constitutes misappropriation of [Arrow's] property and fraudulent activity.

[*Id.* at 7, ¶ 5 (emphasis omitted)]. Right PriceIT and Single Source specifically initialed this provision. [*Id.*]. Pursuant to Section 6 of the Agreement, Right PriceIT and Single Source appointed Arrow as their attorney in fact and executed a Limited Power of Attorney authorizing Arrow to endorse checks on their behalf. [*Id.* at 7–8, ¶ 6]. According to Arrow, the Security Agreement and its corresponding documents established Arrow's "superior priority interest in and to all property and assets" of Right PriceIT. [Doc. 1 at ¶ 13].

Arrow alleges that Right PriceIT and Does 1 through 10 ("Doe Defendants") "instructed their end user to remit payment directly to them or received payments from their end user on certain invoices which were the sole property of Arrow." [*Id.* at ¶ 18]. Arrow claims that Right PriceIT and the Doe Defendants "did not remit these funds to Arrow" and instead "diverted and misappropriated the amount of Six Hundred Eighty Eight Thousand Eight Hundred Sixty Two Dollars and Sixteen Cents ($688,862.16) which is the rightful property of Arrow." [*Id.*]; *see also* [Doc. 22-2 at 19, 21–22]. Arrow alleges it has suffered damages, including "loss of its collateral security under the Security Agreement," as a result of Right PriceIT's default under the Agreement. [Doc. 1 at ¶ 19]. Specifically, Plaintiff claims that Right PriceIT "has breached the terms of the Security Agreement by instructing end users to remit payment or received payment directly to them instead of Arrow's lock box and by failing to remit those fund[s] they received to Arrow pursuant to the Security Agreement." [*Id.* at ¶20]; *see also* [*id.* at ¶ 24].

*The Personal Guaranty.* On September 30, 2020, Mr. Price—the "President, Chief Financial Officer, [and] Director" of Right PriceIT, [*id.* at ¶ 3]— executed a guaranty ("Personal Guaranty" or "Guaranty") in favor of EC America, a subsidiary of immixGroup, an Arrow subsidiary. [Doc. 22-2 at 15–17]; *see also* [Doc. 1 at ¶ 11]. The purpose of the Personal Guaranty was to induce immixGroup "to extend credit of $1,028,713.92 for [Purchase Order Number] 0929CITRIXDNRECAMERIC" to Right PriceIT. [Doc. 22-2 at 15]. The Guaranty states in relevant part that:

> [Mr. Price] guaranties to Arrow the complete and punctual payment or performance of each and every indebtedness or obligation, now existing or arising at any time hereafter, of [Right PriceIT] to Arrow, including any indebtedness or obligation arising out of or relating . . . to the sale of goods to [Right PriceIT] by Arrow, the distribution of goods by [Right PriceIT] for or on behalf of Arrow, or the rendition of any services by [Right PriceIT] or Arrow in connection with the sale, resale or distribution of any such goods[.]"

[*Id.* at 15, ¶ 1]. The Personal Guaranty also includes an "Absolute Unconditional Guarantee" provision, which states:

> This guaranty is an absolute, present, primary, continuing, unlimited, unconditional and irrevocable guaranty of payment and performance (and not merely of collection), and is not conditioned or contingent upon any effort or attempt to seek performance or payment from [Right PriceIT] or upon any other condition or contingency. If [Right PriceIT] at any time fails to pay or perform any of the Obligations, Guarantor shall be obligated, without notice or demand, to effect complete and immediate payment and performance, and (without release of [Right PriceIT]) Guarantor shall be primarily and directly liable to Arrow for complete payment and performance of the Obligations without offset, counterclaim or recoupment. Arrow is not and shall not be required to first pursue any right or remedy against or seek any redress from [Right PriceIT] or any other person or entity or to first take any action whatsoever with respect to any security for the Obligations.

[*Id.* at 15, ¶ 3]; *see also* [Doc. 1 at 35–36 (Purchase Order Number 0929CITRIXDNRECAMERIC)]. Plaintiff alleges that, on December 1, 2021, Mr. Price "breached the guaranty by failing and refusing to honor the guaranty and paying Arrow for the

indebtedness of Right [PriceIT] in the amount of Six Hundred Eighty Eight Thousand Eight Hundred Sixty Two Dollars and Sixteen Cents ($688,862.16)." [Doc. 1 at ¶ 22].

Plaintiff asserts five causes of action in the Complaint: (1) breach of contract with respect to the Security Agreement, against Right PriceIT (Count I); (2) breach of contract as to the Personal Guaranty, against Mr. Price (Count II); (3) fraud, against Right PriceIT (Count III); (4) conversion, against Right PriceIT (Count IV); (5) breach of contract as to the "Term Account,"[3] against Right PriceIT (Count V). [*Id.* at 7–14].

Mr. Price and Right PriceIT were served on July 8, 2022, [Doc. 9; Doc. 10], but they have failed to answer or otherwise respond to the Complaint. To date, Defendants have not entered an appearance in this case. Accordingly, on August 4 and 12, 2022, the Clerk of Court entered default as to Right PriceIT and Mr. Price, respectively, following Plaintiff's motions requesting such relief. *See* [Doc. 14; Doc. 15; Doc. 18; Doc. 19].

Arrow filed the instant Motion for Default Judgment on September 20, 2022. [Doc. 22; Doc. 22-1]. Arrow seeks to recover "the principal amount in the sum of Six Hundred Eighty Eight Thousand Eight Hundred Sixty Two Dollars and Sixteen Cents ($688,862.16) for the products they sold and shipped and the funds that were diverted by Defendants." [Doc. 22-1 at 11]. Arrow also seeks "pre-judgment interest at a rate of 8% per annum," pursuant to Colorado law, in the amount of $44,388.12. [*Id.* at 11–12]. Finally, Plaintiff seeks "costs and expenses of collection, including reasonable attorneys' fees," in the total amount of $6,277.71. [*Id.* at 12].

---

[3] According to Plaintiff, the "Term Account" under Count V refers to two Purchase Orders that Right PriceIT entered with Arrow's subsidiary EC America "for the purchase of electronic products in which Right [PriceIT] agreed to payment terms of net thirty (30) days." [Doc. 1 at ¶ 48]. Right PriceIT "submitted purchase orders 10162019NPDOT321 and 0929CITRIXDNRECAMERIC" and Arrow "shipped said products to [Right PriceIT's] end user." [*Id.*].

**LEGAL STANDARD**

Pursuant to Rule 55, a party may apply to the Court for a default judgment after a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(a), (b)(2).  A court may conduct hearings to conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).  Even still, there is no right to a default judgment, and "the entry of a default judgment is committed to the sound discretion of the district court."  *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

Determining whether to enter default judgment requires the Court to first resolve whether it has jurisdiction, and if it does, whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendants.  *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *see also Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd.*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *5 (D. Colo. June 8, 2015) ("There must be a sufficient basis in the pleadings for the judgment entered." (internal quotation marks omitted)).  If the Court lacks jurisdiction—either subject matter over the action or personal over the defendant—default judgment cannot enter.  *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) ("A default judgment in a civil case is void if there is no personal jurisdiction over the defendant."); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." (emphasis and internal quotation marks omitted)).

By their default, Defendants admit Plaintiff's well-pleaded allegations of fact, are precluded from challenging those facts by the judgment, and are barred from contesting on appeal

the facts established. *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The facts alleged in the Complaint which are deemed admitted upon default may form the basis for the Court's entry of a default judgment. *See, e.g.*, *Salba Corp. v. X Factor Holdings, LLC*, No. 12-cv-01306-REB-KLM, 2015 WL 5676690, at *1 (D. Colo. Sept. 28, 2015). A court may also consider undisputed facts set forth in affidavits and exhibits. *Guarneros v. Denver Green Party*, No. 19-cv-00139-RM-NYW, 2020 WL 7055493, at *2 (D. Colo. Dec. 2, 2020).

But a party in default does not admit conclusions of law, only allegations of fact, and so those allegations must be enough to establish substantive liability. *Bixler*, 596 F.3d at 762; *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *3 (D. Colo. May 24, 2017) (citing 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). In addition, the entry of default does not establish the amount of damages that is reasonable. Damages may be awarded only if record evidence adequately reflects the basis for the award. *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274–75 (D. Kan. 2016).

## ANALYSIS

### I.   Subject Matter Jurisdiction

First, the Court considers whether it possesses subject matter jurisdiction over this case. Plaintiff invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See* [Doc. 1 at ¶ 4]. Section 1332 states that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

On May 12, 2023, the Court ordered Plaintiff to show cause why this case should not be dismissed without prejudice for lack of subject matter jurisdiction, on the basis that Plaintiff's allegations were insufficient to establish the citizenship of Mr. Price and Right PriceIT. *See* [Doc. 24]. Plaintiff responded on May 22, 2023, stating, *inter alia*, that Right PriceIT's Articles of Organization "identifies Nicholas Price and states th[at] Mr. Price is a citizen of the State of Ohio," and Mr. Price is the "Director, President and Chief Executive Officer" of Right PriceIT, [Doc. 25 at ¶ 8], and attaching a copy of the Articles of Organization, [*id.* at 8–10].[4]

The Articles of Organization, filed with the Ohio Secretary of State on July 22, 2019, reflects that Mr. Price is Right PriceIT's agent, indicates that Mr. Price is Right PriceIT's only member, and includes an address for Mr. Price located in Plain City, Ohio. *See* [*id.*]. In addition, the Personal Guaranty executed by Mr. Price reflects the same address as that listed in Right PriceIT's Articles of Organization and the underlying Security Agreement (also signed by Mr. Price). *Compare* [*id.*] *with* [Doc. 22-2 at 6, 10, 15, 17]. "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile." *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006). In addition, a limited liability company takes the citizenship of all its members. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). Courts are to consider the "totality of the circumstances" to determine a party's

---

[4] The Court notes that, apart from the fact that Plaintiff attached Right PriceIT's Articles of Organization to his response to the Order to Show Cause, *see* [Doc. 25 at 8–10], there is no difference between Plaintiff's representations regarding Mr. Price's and Right PriceIT's citizenship in the instant response and his representations in the Complaint and Motion for Default Judgment. *Compare* [*id.* at ¶ 8 ("Arrow requested and received the Articles of Organization of Right [PriceIT] from the State of Ohio, Secretary of State, which set forth the identity of one member and his respective citizenship. The Articles of Organization identifies Nicholas Price and States the [sic] Mr. Price is a citizen of the State of Ohio. Further, a search online of Right [PriceIT] states that Nicholas Price is the Director, President[,] and Chief Executive Officer of Right [PriceIT]." (capitals omitted))] *with* [Doc. 1 at ¶ 4 (same)] and [Doc. 22-1 at 5 (same)].

domicile. *Middleton v. Stephenson*, 749 F.3d 1197, 1200–01 (10th Cir. 2014). Courts typically consider several factors in determining a party's citizenship, including the site of personal and real property and the party's place of employment or business. *See Dumas v. Warner Literary Grp., LLC*, No. 16-cv-00518-RM-NYW, 2016 WL 10879185, at *2 (D. Colo. Apr. 29, 2016).

The Court finds that, based on the totality of the circumstances in this case, it has diversity jurisdiction on the grounds that Plaintiff is a citizen of Delaware and Colorado, [Doc. 1 at ¶ 1], whereas Defendants are each citizens of Ohio.

## II.   Personal Jurisdiction

"The requirement that a court have personal jurisdiction flows from the Due Process Clause. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (brackets, ellipses, and internal quotation marks omitted). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis omitted). "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent. The personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal case citations omitted).

"To exercise jurisdiction in harmony with due process, [the] defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (brackets and internal quotation marks omitted); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The minimum contacts may give way to specific or general

jurisdiction.  *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  General jurisdiction arises when a defendant's contacts with a forum state are so continuous and systematic to essentially render it "at home" in a state.  *See Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014).  Specific jurisdiction is jurisdiction particular to the instant action and arises where a defendant purposefully directs its activities to residents of the forum, and "the cause of action arises out of those activities."  *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007).

Plaintiff contends that "the Court has personal jurisdiction over Defendants and venue lies in this District, as Defendants entered into the Security Agreement with Arrow, which i[s] 'governed by the laws of the State of Colorado.'"  [Doc. 22-1 at 5].  The section of the Security Agreement referenced by Plaintiff is the "Governing Law" provision, which provides that the Agreement "will be governed by the laws of the State of Colorado" and "[t]he forum for any dispute under this agreement will be the appropriate state or federal court in Arapahoe County, Colorado."  [Doc. 22-2 at 9, ¶ 14].

Parties may consent to personal jurisdiction through the use of a forum selection clause. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).  Forum selection clauses generally establish a prima facie case of personal jurisdiction.  *See Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).  The Tenth Circuit "will enforce a mandatory forum selection clause unless the party challenging it 'clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (alteration omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  "However, the language of a forum-selection clause is crucial to determining whether a particular action falls within its scope."  *Dappcentral, Inc. v. Guagliardo*,

No. 21-cv-00809-PAB-SKC, 2022 WL 3920845, at *5 (D. Colo. Aug. 30, 2022) (citing *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1093 (10th Cir. 2019)).

As mentioned, the forum selection clause in the Security Agreement states, "[t]he forum for any dispute under this agreement will be the appropriate state or federal court in Arapahoe County, Colorado." [Doc. 22-2 at 9, ¶ 14]. The Security Agreement also provides that it is governed by Colorado law. [*Id.*]. The Court notes that although Arrow's signature is not contained in either of the copies of the Security Agreement that it submitted to the Court, the Agreement is signed by Nicholas Price on behalf of Right PriceIT. *See* [Doc. 1 at 20; Doc. 22-2 at 10]. Thus, in light of Right PriceIT's execution of the Security Agreement, the Court finds that the forum selection clause is valid and enforceable against Right PriceIT. In addition, the forum selection clause in the Security Agreement is mandatory as it requires that any disputes under that agreement "will be" raised in a Colorado forum. *See K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 500 (10th Cir. 2002); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997).[5]

Moreover, the Personal Guaranty—signed by Mr. Price in his personal capacity, *see* [Doc. 22-2 at 17]—also includes a forum selection clause, which provides in relevant part that "[t]he obligations of Guarantor hereunder may be enforced, *at the option of Arrow*, in any state or federal court located in the State of New York, to the jurisdiction of which courts Guarantor hereby

---

[5] The Court emphasizes, however, that the relevant question here is whether the forum selection clause—as opposed to the Security Agreement as a whole—is valid and enforceable. *See, e.g.*, *Lewis v. Google, Inc.*, No. 19-cv-02387-WJM-KLM, 2019 WL 10749715, at *2 (D. Colo. Dec. 31, 2019); *see also Dupray v. Oxford Ins. Co. TN LLC*, No. 22-cv-00430-NYW-STV, 2022 WL 17618459, at *5 n.5 (D. Colo. Dec. 13, 2022) (noting that "courts have not drawn a clear distinction between validity and enforceability when analyzing forum-selection clauses, including whether federal law governs issues of validity in addition to those of enforceability of forum-selection clauses, to the extent there is such a distinction" (cleaned up)).

irrevocably consents, *or any other court of competent jurisdiction*."   [*Id.* at 16, ¶ 5 (emphasis added)].

Unlike the mandatory nature of the forum selection clause in the Security Agreement, the forum selection clause in the Personal Guaranty is permissive (i.e., "[t]he obligations . . . hereunder *may* be enforced" in a particular court).[6]   Nevertheless, the forum selection clause in the Personal Guaranty is clear that Arrow may exercise "the option" to enforce the obligations of Mr. Price under the Personal Guaranty, and that it may do so in "any . . . court of competent jurisdiction[,]" [*id.*], which Arrow has done by seeking relief in this District.  *See Zimmerman Metals, Inc. v. United Eng'rs & Constructors, Inc., Stearns-Roger Div.*, 720 F. Supp. 859, 861 (D. Colo. 1989) (where a permissive, non-exclusive forum selection clause provided that "either party may litigate any such dispute in any court of competent jurisdiction," finding that the action could "be maintained in the United States District Court for the District of Colorado if this court [was] a court of 'competent jurisdiction[]'").

Thus, given the mandatory nature of the forum selection clause in the Security Agreement (requiring that disputes "will be" brought in Colorado), and the fact that Arrow initiated this action in this District, at least in part, to exercise its unilateral "option" in the Personal Guaranty to enforce Mr. Price's obligations under that document, the Court finds that it has personal jurisdiction over Right PriceIT and Mr. Price, and venue is proper in this District.  *Cf. Burger King Corp.*, 471 U.S. at 472 n.14 ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a

---

[6] *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 674 (10th Cir. 2020) ("[T]he lack of any language suggesting exclusivity confirms that the parties bargained for a permissive, but not mandatory, forum selection clause.").

'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" (citation omitted)).[7]

Therefore, the Court concludes that it has personal jurisdiction over Defendants Price and Right PriceIT and venue is proper in this District.  *Cf. PlasmaCAM, Inc. v. Worden*, No. 18-cv-02075-PAB-KMT, 2020 WL 1062903, at *3 (D. Colo. Mar. 4, 2020) ("[G]iven the breadth of the forum-selection clause, the Court finds that it applies to the copyright infringement dispute at issue here.  Thus, because the clause is enforceable and applies to the dispute as issue, defendant agreed to jurisdiction in Colorado and, therefore, the Court has personal jurisdiction over defendant.").

---

[7] The Court notes that the Personal Guaranty contains a choice-of-law clause, which states that the Personal Guaranty "shall be construed and enforced in accordance with the laws of the United States of America and the State of New York applicable to contracts made and to be wholly performed in such State."  [Doc. 22-2 at 16, ¶ 10].  The Court does not find that this clause makes a difference in determining whether Mr. Price agreed to the personal jurisdiction of this Court.  As discussed above, the Personal Guaranty is clear that Mr. Price's obligations under the Guaranty "may be enforced, *at the option of Arrow*, in any . . . court of competent jurisdiction."  [*Id.* at 16, ¶ 5 (emphasis added)].  Moreover, this Court would still conclude it has jurisdiction over Mr. Price under New York law.  Specifically, although Mr. Price signed the Security Agreement on behalf of Right PriceIT (as opposed to in his personal capacity), under New York law, "a non-signatory [to a contract] may be bound by a forum selection clause . . . where the non-signatory is a party to another related agreement that forms part of the same transaction."  *P.S. Fin., LLC v. Eureka Woodworks, Inc.*, 184 N.Y.S.3d 114, 129 (App. Div. 2023).  Similarly, "a forum selection clause may be enforced against a non-signatory under the 'closely related' doctrine where the non-signatory and a party to the agreement have such a close relationship that it is foreseeable that the forum selection clause will be enforced against the non-signatory."  *Id.* (cleaned up).  Here, the Security Agreement and Personal Guaranty are closely related insofar as the Personal Guaranty obligates Mr. Price to pay for the indebtedness created by the Security Agreement.  *See* [Doc. 22-2 at 15, ¶ 1 (guaranteeing "payment or performance of each and every indebtedness or obligation, *now existing or arising at any time hereafter*, of [Right PriceIT] to Arrow, including any indebtedness or obligation arising out of or relating . . . to the sale of goods to [Right PriceIT] by Arrow")].  In addition, Mr. Price has a close relationship with Right PriceIT as its President and CEO, *see* [*id.* at 17], such that it was foreseeable that the mandatory forum selection clause in the Security Agreement would be enforced against Mr. Price.

III.   **Plaintiff's Contract Claims**

Arrow moves for default judgment only as to its contract claims under Counts I, II, and V. *See* [Doc. 22-1 at 6–12].   Under Colorado law, to prevail on a breach of contract claim, the party seeking to recover must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.   *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).[8]

A.   **Count I – Breach of Security Agreement against Right PriceIT**

The Court finds that Arrow has established the elements of breach of contract with respect to Count I.  For the first element, Arrow contends that "the Security Agreement constitutes a valid and enforceable contract between the [P]arties[.]"   [Doc. 22-1 at 7].   As previously noted, the Security Agreement that Plaintiff submitted to the Court is not signed by Arrow.  *See* [Doc. 1 at 20; Doc. 22-2 at 10].   Although the Court presumes that Arrow could produce a signed Security Agreement, it is of no event here because "common law contract principles . . . allow for the formation of contracts without the signatures of the parties bound by them."  *Yaekle*, 195 P.3d at 1107; 2 Williston on Contracts § 6:44 ("[A]ny written contract, though signed by only one party, will bind the other if he or she accepts the writing.").   Given that Arrow presently seeks to enforce the terms of the Security Agreement, the Court finds that the Agreement is valid and enforceable, thus establishing the first element of this breach of contract claim.

---

[8] The Personal Guaranty also includes a New York choice-of-law clause, *see* [*id.* at 16, ¶ 10], but the elements of a breach of contract claim under New York law are the same as those under Colorado law.  *Compare JP Morgan Chase Bank, Nat'l Ass'n v. Ilardo*, 940 N.Y.S.2d 829, 840 (Sup. Ct. 2012) *with Diodosio*, 841 P.2d at 1058.

Second, Arrow asserts that it "plead[ed] that it has performed each and every duty to which [it was] obligated under the Security Agreement," which "includes shipping electronic products to [Right PriceIT's] end user." [Doc. 22-1 at 7]; *see also* [Doc. 22-2 at 19, 21–22 (invoices showing the items that EC America shipped to Right PriceIT's end users)].

Third, Arrow alleges that Right PriceIT "breached the Security Agreement by instructing end users to remit payment or received payment directly to them instead of Arrow's lock box and by failing to remit those fund[s] they received to Arrow pursuant to" paragraphs 4 and 5 of the Security Agreement. [Doc. 22-1 at 7–8; Doc. 22-2 at ¶ 5;]; *see also* [Doc. 22-2 at 7 (paragraph 5 of the Security Agreement, stating: "The assigned funds, which constitute payment pursuant to this agreement, are the property of [Arrow]," and "[i]f such funds . . . are received by either Debtor, such Debtor will immediately forward such items to the address described in paragraph 4 above, or if funds are directly deposited into either of Debtor's bank account by Debtor's customer or in error by either Debtor, such Debtor will make payment of same to [Arrow] within 24 hours of deposit.")].

Fourth, Arrow contends—and presents evidence establishing—that it has sustained damages as a result of Right PriceIT's breach, in the amount of $688,862.16. [Doc. 22-1 at 7; Doc. 22-2 at ¶¶ 7–8]; *see also* [Doc. 22-2 at 19, 21–22 (invoices to Right PriceIT for Purchase Order Nos. 10162019NPDOT321 and 0929CITRIXDNRECAMERIC, totaling $688,862.16)].

Accordingly, the Court finds that Arrow has sufficiently established the elements of its breach of contract claim under Count I, and the Motion is thus **GRANTED** with respect to this claim.

**B.      Count II – Breach of Personal Guaranty against Mr. Price**

Arrow asserts a breach of contract claim under Count II with respect to the Personal Guaranty signed by Mr. Price.  *See* [Doc. 1 at 8–10].  As previously mentioned, the Personal Guaranty also includes a New York choice-of-law clause.  *See* [Doc. 22-2 at 16, ¶ 10].

Under New York law, "[i]n an action against a guarantor, a plaintiff must show: (1) the existence of the guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under the guaranty."  *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20-cv-2043 (LJL), 2020 WL 6712307, at *4 (S.D.N.Y. Nov. 16, 2020); *see Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 85 (N.Y. 2015); *see also City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71 (1998) ("[T]he critical instrument for present purposes is the guaranty agreement, which is independent and by its terms stands alone in imposing direct and primary obligations for payment on the guarantor.").

The Court finds the allegations in the Complaint are sufficient to establish the elements of breach of contract under Count II.  First, the Personal Guaranty constitutes a valid and enforceable contract.  Indeed, under the contract, Mr. Price

> guaranties to Arrow the complete and punctual payment or performance of each and every indebtedness or obligation, now existing or arising at any time hereafter, of [Right PriceIT] to Arrow, including any indebtedness or obligation arising out of or relating directly or indirectly to the sale of goods to [Right PriceIT] by Arrow, the distribution of goods by [Right PriceIT] for or on behalf of Arrow, or the rendition of any services by [Right PriceIT] or Arrow in connection with the sale, resale or distribution of any such goods (collectively, "<u>Obligations</u>").

[Doc. 22-2 at 15, ¶ 1].  The Personal Guaranty also includes an "Absolute Unconditional Guarantee" provision, which states:

> This guaranty is an absolute, present, primary, continuing, unlimited, unconditional and irrevocable guaranty of payment and performance (and not merely of collection), and is not conditioned or contingent upon any effort or attempt to seek performance or payment from [Right PriceIT] or upon any other condition or contingency.  If [Right PriceIT] at any time fails to pay or perform any of the

16

> Obligations, Guarantor shall be obligated, without notice or demand, to effect complete and immediate payment and performance, and (without release of [Right PriceIT]) Guarantor shall be primarily and directly liable to Arrow for complete payment and performance of the Obligations without offset, counterclaim or recoupment.  Arrow is not and shall not be required to first pursue any right or remedy against or seek any redress from [Right PriceIT] or any other person or entity or to first take any action whatsoever with respect to any security for the Obligations.

[*Id.* at 15, ¶ 3].  Further, in any action to enforce the obligations under the Personal Guaranty, Mr. Price agrees that "Arrow's books and records showing the account between Arrow and [Right PriceIT] shall be admissible in evidence in any action or proceeding to which Arrow is a party and shall constitute *prima facie* proof of the items set forth therein."  [*Id.* at 16, ¶ 5].  Mr. Price also "absolutely and unconditionally waives . . . the benefit of . . . any statute or rule of law which limits the rights of Arrow to recover in full from [Right PriceIT] and [Mr. Price] (i) all amounts required by the Obligations to be paid to Arrow and (ii) the benefit of all performances required by the Obligations to be performed to or for the benefit of Arrow."  [*Id.* at 16, ¶ 7]; *see 136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12 (2d Cir. 2016) ("As to the Guaranty, 'broad, sweeping and unequivocal language' in an absolute and unconditional guaranty generally 'forecloses any challenge to the enforceability and validity of the documents which establish defendant's liability for payments arising under the [underlying] agreement, as well as to any other possible defense to his liability for the obligations.'" (citation omitted)).

Second, as previously noted, Arrow has presented evidence showing amounts invoiced to Right PriceIT in Purchase Order Nos. 10162019NPDOT321 and 0929CITRIXDNRECAMERIC, totaling $688,862.16.  [Doc. 22-2 at 19, 21–22].[9]  The unpaid invoices constitute an "indebtedness

---

[9] Arrow attaches the actual purchase orders to the Complaint, *see* [Doc. 1 at 35–36, 38–39], but the amounts in the purchase orders are significantly higher than the amounts invoiced for those purchases.  *Compare* [*id.*] *with* [Doc. 22-2 at 19, 21–22].

or obligation" that existed or arose after Mr. Price executed the Personal Guaranty, which Mr. Price absolutely and unconditionally agreed that he was responsible for paying.  [*Id.* at 15, ¶¶ 1, 3].  Arrow contends that it performed its duties under the Personal Guaranty by making a demand upon Mr. Price for that amount.  [Doc. 22-1 at 9; Doc. 1 at ¶ 32].

Third, the undisputed facts show that Mr. Price failed to meet his obligations as guarantor by failing to pay those amounts.  [Doc. 1 at ¶¶ 32–33].  Thus, due to Mr. Price's breach, the amount of damages therefore qualifies as a liquidated debt for which no hearing is required.  *See Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) ("[A] court may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.").  The evidence adequately establishes the amount due and owing on the Personal Guaranty with respect to the above-referenced invoices is $688,862.16, and Arrow is entitled to this amount as damages for Mr. Price's breach.  *See* [Doc. 22-2 at 16, ¶ 5 ("Arrow's books and records showing the account between Arrow and [Right PriceIT] shall be admissible in evidence in any action or proceeding to which Arrow is a party and shall constitute *prima facie* proof of the items set forth therein.")].

In sum, Arrow has met its burden in establishing the material facts that prove the elements of its breach of contract claim related to the Personal Guaranty under Count II.  Accordingly, the Motion is **GRANTED** insofar as Arrow seeks default judgment on this claim.

### C.    Count V – Breach of the "Term Account" against Right PriceIT

For its third breach of contract claim, Arrow alleges that Right PriceIT breached the "Term Account."  [Doc. 1 at 13].  According to Arrow, the "Term Account" refers to the two purchase orders referenced above—Purchase Order Nos. 10162019NPDOT321 and 0929CITRIXDNRECAMERIC—that Right PriceIT entered with Arrow's subsidiary EC America

"for the purchase of electronic products in which Right [PriceIT] agreed to payment terms of net thirty (30) days."  [Doc. 1 at ¶ 48]; *see* [*id.* at 35–36, 38–39].

The Court declines Arrow's request for default judgment as to Count V.  Even assuming that the Purchase Orders at issue constitute contracts, each Purchase Order contains a total amount of over $1 million, *see* [*id.* at 36, 39]; however, under Count V, Arrow claims that Right PriceIT breached the "Term Account" by failing to remit the total amount of $688,862.16.  [*Id.* at ¶ 50].  Arrow does not explain the discrepancies between these amounts.  *See* [Doc. 22-1].  The Court acknowledges that Arrow seeks the same amount of monetary relief under all three contractual counts in the Complaint, *see* [Doc. 1 at ¶¶ 27, 32, 52], and likewise that Purchase Order No. 0929CITRIXDNRECAMERIC, [*id.* at 35–36], is the same Purchase Order that Arrow references under Count II against Mr. Price, [*id.* at ¶ 30].  However, again, Arrow does not explain its basis for seeking only $688,862.16 under Count V, while the Purchase Orders referenced under that count contain amounts totaling $2,170,843.92.  [*Id.* at 36, 39].[10]

Under Rule 54, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Thus, given Plaintiff's failure to sufficiently explain the basis for the relief it seeks for its claim under Count V, and in light of the fact that the Court has already granted Arrow's request for default judgment as to Counts I and II against Mr. Price for the total amount Arrow seeks in the Complaint ($688,862.16), the Court **DENIES** the Motion for Default Judgment insofar as Plaintiff seeks default judgment as to Count V against Right PriceIT.

---

[10] *See supra* note 9.

## IV.     Pre-Judgment Interest

Arrow also seeks pre-judgment interest in the amount of 8% per annum, from December 1, 2021 through the date of entry of default judgment, pursuant to Colo. Rev. Stat. § 5-12-101. [Doc. 22-1 at 11–12]; *see* Colo. Rev. Stat. § 5-12-101 ("If there is no agreement or provision of law for a different rate, the interest on money shall be at the rate of eight percent per annum, compounded annually.").

In the federal context, there is "a preference, if not a presumption, for prejudgment interest." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000).  Accordingly, the Court finds that an award of prejudgment interest is appropriate in this case.  *See Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002) (noting that whether to award prejudgment interest is within the discretion of the trial court).  The Court therefore awards Arrow prejudgment interest at a rate of 8% per annum, from December 1, 2021 through the date of entry of default judgment against Right PriceIT and Mr. Price.

## V.     Attorneys' Fees and Costs

Finally, the Court considers Arrow's request for attorneys' fees in the amount of $5,000.00 and costs in the amount of $1,277.71, for a total of $6,277.71, pursuant to paragraph 10A of the Security Agreement.  [Doc. 22-1 at 12].  Section 10A provides that "Debtors will pay all costs and expenses of collection, including reasonable attorneys' fees."  [Doc. 22-2 at 9, ¶ 10A].

The Court respectfully declines Arrow's request for attorneys' fees.  Although the Court has granted Arrow's request for default judgment as to the breach of the Security Agreement claim under Count I, under the Local Rules of Practice for this District, a motion for attorneys' fees must "include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."  D.C.COLO.LCivR 54.3(b).

Neither the Motion nor the attached Declaration, *see* [Doc. 22-2 at 1–4], complies with these requirements.  Indeed, the Declaration is not proffered by Arrow's attorneys, but instead by a Risk Recovery Specialist employed by Arrow.  [Doc. 22-2 at 1, ¶ 1].[11]  Accordingly, Arrow's request for attorneys' fees is **DENIED**.

With respect to Arrow's request for costs, Rule 54(d) provides that costs should be awarded to the prevailing party.  *See* [Doc. 22-1 at 12]; Fed. R. Civ. P. 54(d).  The Court finds that Arrow is entitled to its costs, but declines to specify the amount of such award in this Order.  Indeed, as Arrow acknowledges, it must file a bill of costs, *see* [Doc. 22-1 at 12], which the Clerk of Court may in turn tax appropriately.  *See* Fed. R. Civ. P. 54(d)(1); D.C.COLO.LCivR 54.1.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)     Plaintiff Arrow Enterprise Computing Solutions, Inc.'s Motion for Default Judgment [Doc. 22] is **GRANTED IN PART** and **DENIED IN PART**, as explained in this Order;

(2)     Default Judgment shall be **ENTERED** against Right PriceIT, LLC and Nicholas Price in the total amount of $688,862.16 for Arrow's breach of contract claims under Counts I and II, with interest at the statutory rate of 8% per annum from December 1, 2021 through the date of entry of default judgment; and

(3)     Plaintiff is entitled to its costs pursuant to Federal Rule of Civil Procedure 54(d) and D.C.COLO.LCivR 54.1.

---

[11] Given Arrow's non-compliance with the Local Rules, it also makes no difference here that the Personal Guaranty at issue under Count II provides that "Guarantor shall reimburse Arrow for all costs and expenses (including counsel fees) incurred by or on behalf of Arrow in enforcing any of the Obligations or any of the obligations or liability of Guarantor or in protecting Arrow's rights hereunder."  [Doc. 22-2 at 16, ¶ 6].

DATED:  June 26, 2023

BY THE COURT:

Nina Y. Wang
United States District Judge